The next case on our calendar is United States of America as Relator versus American University of Beirut. Thank you. Victor, what was that all about? The television wasn't working. Okay, thank you. Counsel, you may proceed. I just remind you that we're under seal here, and we will refer only to the Relator, not by any other name. Right, Your Honor. I won't try to prejudice the other side's case by naming my client. I am going to make my arguments, though. Thank you. So, I respectfully submit that this is a First Amendment case, and it really goes to the heart of the First Amendment. There's never, ever been a party in federal litigation in this country that has been told, that's had its identity sealed against its will. It's never happened before. And in this case, where there's political aspects to the case, political activism, I respectfully submit there's just a very strong First Amendment right to talk about... Who does that right belong to? To a lot of people, including my client. My client... You're assigned to protect the public's right to know. Your client's rights, if they exist at all, are secondary, tertiary. I respectfully submit that everyone has a First Amendment right to speak, and I also submit that... Not every redaction has to be undone. It can be overridden in certain circumstances, where there's a danger, or where there's public concern. It seems to me that your client just wants to get public credit for this case, and that's the motive. It serves no other purpose that I can think of. Maybe you can enlighten me on that. Respectfully, public credit is important. Public credit allows people to accomplish things. Isn't the test here, or the standard reply, is whether the district court abused its discretion in balancing your client's desire for public credit against the dangers that would be visited on the American University of Beirut? Should your client be publicly revealed? There was a basis for the judge to reach the conclusion that the sealing would be appropriate on that basis. That there were threats and possibilities of violence and physical harm. Well, Your Honor, I would say at a minimum... Two questions, really. There was a balancing, but before that, it's abuse of discretion. Do you have any quarrel with that part? Well, Your Honor, yes, to an extent. There's enough legal issues here that I would submit that you could take a de novo look at this under the case we cited. Perhaps more importantly, the defendant here really didn't offer a lot besides a letter from its counsel saying, here's what's going on, and even if we do look at this as an abuse of discretion standard, we have a situation where alleged terrorists halfway across the world are getting a veto on First Amendment here in the United States. And I submit that that's just an abuse of discretion. They shouldn't be allowed to have this kind of unprecedented control over what's said. I mean, this whole case is about fighting terrorism. The American University in Beirut operates, as I understand it, and for a number of years, the president of it has not been physically in Beirut precisely because of the danger. And so it may be that it's a terrorist in Lebanon that they're concerned about, but it's a strong American interest in the American University of Beirut that is the possible potential victim of that terrorism. I haven't heard that, of the president being physically located here in the United States. I thought there was something in the papers on that score. Okay. Or perhaps I missed it. In any event, there had been other incidents that were cited in the record to the district judge. Well, you know, a big part of the point of terrorism, Your Honor, is to silence people and scare people. And I would respectfully submit that that's exactly what's going on here. It's an attempt to suppress what people can and cannot say. So that makes it all the more important not to bow down to those threats. You're saying that the First Amendment right that you enjoy here is absolute and never subject to any kind of restraint or modification. Is that your position? I wouldn't go that far, Your Honor, but I would respectfully submit that there has to be a lot more than what was presented to the district judge. A lot more. But you're saying the district judge committed an abuse of discretion? Yes. The balancing of the equities? Yes, Your Honor. That's a high standard. And the First Amendment gives, requires, gives us all a lot of rights, Your Honor. And I submit that under the circumstances, given what's happened, they haven't met that standard. All right. I don't have anything more to say. If you have no more questions. No, but you have reserved three minutes for rebuttal. Yes. We'll hear from the American University. Thank you. Beirut. Thank you, Your Honor. Daniel Rizumna for the American University of Beirut. Counsel? Opposing counsel just told us that this decision gives terrorists the veto power over what's public. I heard that, Your Honor, and we vehemently disagree. The American University of Beirut has been in existence for 150 years. It is chartered by the New York Board of Regents. It is an American university operating in Beirut, but it's very much focused on Western values and the American style of education. It has been existing in a very difficult environment, and as Judge Walker mentioned, there have been numerous incidents of violence and terrorism in Beirut, and the incident Your Honor was referring to, Judge Walker, is that during the Lebanese Civil War, there was a period of 10 years where the president of AUB had to be removed from the university. He's currently there now, but there was this period in the 80s going through much of the 90s where that happened, and the incident that sparked this was the president shortly before that was Malcolm Kerr, who in 1984 was pulled out of the university and murdered. After that, there were a number of school administrators who were abducted, held prisoner, and it was a very violent period of time. Now, certainly, the Civil War has ended, but Syria is right next door, and there are all sorts of incidents that happen all the time, including a recent bombing of a bank in Lebanon, Bank Blum. And at that time, Bank Blum had announced, among others in the banking sector, that the bank intended to abide by U.S. sanctions on Lebanese political party Hezbollah, and as a result of that, that weekend, there was a bombing at Bank Blum's headquarters. We mentioned this to the district court. We put in a letter, and we outlined what we believe to be very plausible dangers if the name of the relator were to be revealed. We are not disagreeing that this is a First Amendment issue. It certainly is, and there is a First Amendment presumption of access. But as, I think, Your Honor, Judge Pooler mentioned, or perhaps it was Judge Walker, this is a qualified privilege. And what is required under the First Amendment, which is the more robust presumption, there's a common law presumption as well, but the First Amendment presumption is more robust, what is required is that we look at the value of the First Amendment right, and in this case, the court found that there was negligible value. And the reason for that is this is a false claims act, and the relator brought the action on behalf of the United States, not on behalf of itself. Negligible weight or presumption here, and the district court weighed that against what was the potential dangers, and the judge found there was a plausible danger to the university. So it was a qualified right. The judge made specific findings of a plausible danger, and then narrowly tailored the actual sealing. So the only thing that remains under seal at this point is the identity of the relator, and information that would reveal that identity. Very narrowly tailored to protect the university's interest in safety of the students, faculty, and the university itself. What's the standard we use for review here? Judge Walker, you were right, it's an abuse of discretion standard. The case cited by the relator, U.S. v. Molina, had nothing to do with the actual issues we're dealing with. Molina was a situation in which a criminal defendant sought to see the pre-sentence investigative report of his co-defendants who were not testifying. It was essentially a Brady-Giglio issue, and the court said, we'll look at that de novo, whether a defendant has the right to see the PSR of other defendants who are not testifying. Very, very different. The court made specific on-the-record findings, found a negligible value to the First Amendment presumption here based on the fact that it really didn't go to the core issue, which is the functioning of the U.S. courts, the ability of the U.S. public to monitor the proceedings. The court correctly weighed those, and it's subject to an abuse of discretion standard. What the judge did here, Judge Atkins certainly did not abuse his discretion. American University turns out to have been in violation of several rules under which they received money and wound up admitting guilt and paying back money, didn't they? Well, Your Honor, I take a slight issue with that. So the American University of Beirut signed certifications in order to get U.S. AID grants. They didn't admit guilt. They did not admit knowingly doing this. Knowingly. The critical issue under the certifications is it has to be a knowing violation. We did not agree that. The U.S. government did not require that because there was, in our mind, clear evidence that we did not knowingly do that. But there was a mistake. There was no question about it. On the day the complaint was unsealed, American University of Beirut entered into this resolution, the relator was part of that, and at that point we agreed to pay back $700,000 of the grant money that we had received because of the mistake that clearly had been made. The relator's argument is that not just the public, but they themselves, the relator, have a right to the public value of what they did. They want people to know that they were good here in helping the United States taxpayers get back money that shouldn't have been spent. They certainly have a right, like all members of the public, to do that, Your Honor. But as Judge Walker pointed out, it's a qualified privilege, this presumption of access. And here, where the relator brought the action on behalf of the United States, Judge Etkin properly found that the value of revealing the relator's name was negligible, and it was only tangential to the case. So ultimately, Judge Etkin weighed, balanced these competing concerns, and his finding that the relator's identity should continue to be under seal is certainly not an abuse of discretion. If nothing else, I'll sit down. Thank you very much. Thank you. Mr. Abrams, you've reserved three minutes for rebuttal. Yes, I have just one thing I'd like to say in response, which is it's not just the name of my client that's under seal. Also, the judge's decision on that issue, a substantial amount of it is redacted. So the judge's reasoning in the decision is also under seal at this point. But you've seen it, of course. We have all seen it. That's correct, Your Honor. So then what would the public gain from the reasoning? Your Honor, the public's gaining something from knowing the reasoning of courts and judges in general. There's a general principle that the public has a right to see the reasoning of courts. So if the name is removed and any indication of your client is removed from the order or from the opinion of the court, is it your position then that it should be revealed if we decide against you on the name? I would see that as a step in the right direction. I would see that as positive. I didn't see in the record that you had asked Judge Etkin to alter his redaction decisions and asked for less to be redacted in particular. Did you make such an application? I believe so. I believe we made an application and filed an amended notice of appeal. It's a few months back, but I'm pretty sure. Okay. I'm not talking about the identity of your client. I'm talking about the specific language you wish hadn't been redacted in any particulars. Did you identify a word or a phrase or a particular sentence that you thought shouldn't have been redacted while complying with the judge's bottom line finding? Not with that level of detail, Your Honor. Okay. Thank you. And have you asked us to look at the redaction as part of this appeal? Well, I appealed the redaction. I made that an issue in the appeal. I didn't say, well, this should have been and that shouldn't have been. I just appealed the fact that the opinion itself was redacted. I understand. I'm pretty sure. Okay. Okay? Thank you. Thank you. Thank you both. We'll reserve decision.